IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NORFOLK SOUTHERN RAILWAY )
COMPANY, )
          Plaintiff, ) CIVIL ACTION NO. 3:06-58
      v. )
) JUDGE KIM R. GIBSON
POWER SOURCE SUPPLY, INC., )
          Defendant. )

## MEMORANDUM OPINION & ORDER

**Gibson, J.,**

Now before the Court is Defendant's Motion to Dismiss, filed pursuant to Fed. R. Civ. P. 12(b)(2) (Document No. 12), as well as Plaintiff's opposition thereto (Document No. 16), Defendant's Reply (Document No. 21), and Plaintiff's Sur-reply (Document No. 24). Plaintiff Norfolk Southern Railway Company (hereinafter "Plaintiff" or "Norfolk") filed its Complaint on March 13, 2006, premising this breach-of-contract action on the Parties' diverse citizenship. Document No. 1. Defendant Power Source Supply, Inc. (hereinafter "Defendant" or "PSS") filed the motion *sub judice* on July 6, 2006, objecting to the Court's jurisdiction over its person. Discovery was subsequently stayed pending resolution of the motion *sub judice*. Document No. 35.

## I. BACKGROUND AND PROCEDURAL POSTURE

Norfolk is incorporated under the laws of Virginia, maintains its principal place of business in Norfolk, Virginia, and operates a locomotive repair facility in Altoona, Pennsylvania. Norfolk has entered into several contracts for the sale of equipment to PSS, a Canadian distributor of used equipment for the locomotive, gas, and oil industries. In February 2004, Norfolk sold PSS nineteen used locomotives for $356,250.00. Exh. A attached to Plaintiff's Response, Document No. 16-2, pp.

1

6-10. In May 2004, PSS purchased from Norfolk an additional four locomotives for $178,000.00. *Id.* at 11-18. A third sale, arranged over an eight-month period in 2004 and 2005, gave rise to this lawsuit.

Norfolk's Altoona facility received Purchase Order #222147, detailing the sale of thirty-six used locomotives for $1,000,000.00, via a fax from PSS dated July 29, 2004. *Id.* at 19-20. Responding to a September 9, 2004, email, Jamie Crowshaw, President of PSS (hereinafter "Crowshaw"), sent Norfolk another fax, also dated September 9, 2004, revising the Purchase Order and addressing various terms of the sale. *Id.* at 21-23. Norfolk responded by email on September 10 and received another fax from Crowshaw that same day. *Id.* at 24-28. On September 13, 2004, PSS faxed Norfolk Purchase Order #222258, which reflected the recent negotiations and revisions to Order #222147. *Id.* at 29-30. Norfolk then sent PSS a bill of sale for 1.3 million dollars on January 13, 2005. *Id.* at 31-34.

PSS subsequently faxed Plaintiff Revision 1 to Purchase Order #222258 on February 6, 2005. *Id.* at 35-37. Pursuant to further negotiations, the contract now included several items for a total price of $1,097,500.00. *Id.* Three days later, Defendant faxed Norfolk another revision. The final contract was for the sale of the original thirty-six locomotives, as well as three engines, three generators, fifteen dynamic break fans, and seven combos (hereinafter "the Equipment") at a cost to PSS of $1,073,315.00. *Id.* at 38-40. On February 14, 2005, Joseph Richardella, a System Manager at Norfolk (hereinafter "Richardella"), sent Crowshaw a bill of sale for that amount, which PSS apparently executed in Canada and mailed back to Pennsylvania. *Id.* at 41-51. According to the affidavit of Mark Towdon, a Norfolk employee familiar with these negotiations (hereinafter "Towdon"), "[i]n addition to the above-listed correspondence, during the time period in question there were numerous phone calls initiated by Jamie Crowshaw . . . with either Joe Richardella of NSR Altoona or myself concerning . . . PSS' Purchase Order #222258." *Id.* at ¶ 9.

2

According to Plaintiff's Complaint, Norfolk delivered the equipment to PSS in accordance with the terms of sail, but has received only $289,000.00 in payment. Document No. 1, ¶¶ 12-14. Count One therefore states a claim for breach of contract and demands judgment in the amount of $784,315.00, along with interests and costs. *Id.* at ¶ 18. Count II pleads unjust enrichment, in that PSS has "received a benefit in the amount of at least $784,315.00 as a result of its acceptance of the Equipment [and it] would be inequitable and unjust for PSS to retain the benefit it has obtained without full payment. . . ." *Id.* at ¶¶ 22-23.

According to Crowshaw's affidavit, PSS was incorporated in 2003; "serves as an equipment broker for its customers, buying and selling as necessary;" and, since its inception, has never resided, held its principal place of business, owned or leased real property, owned an account with any financial institution, maintained an office or contact information, or directly solicited or advertised in Pennsylvania. Document No. 14, ¶¶ 4-13. Crowshaw states that PSS has also never held "itself out to the public as doing business in the Commonwealth of Pennsylvania and has not sought nor received permission from the Commonwealth of Pennsylvania to do business there." *Id.* at ¶ 14. PSS has not designated an agent for process in Pennsylvania and does not pay taxes in Pennsylvania. *Id.* at ¶ 15-16. PSS has, however, "purchased or sold approximately $4,026,796.00 CDN worth of equipment with sellers and buyers located within the Commonwealth of Pennsylvania." *Id.* at ¶ 19. That amount represents slightly less than seven percent of PSS' total business since incorporation. *Id.* at ¶ 20. Crowshaw denies that PSS ever "visited or physically entered the Commonwealth of Pennsylvania during the course of its negotiations and dealings with" Norfolk. *Id.* at ¶ 21. Crowshaw also avers that PSS made its payments to Norfolk's offices in Atlanta, and that much of the Equipment was sent to PSS from locations other than Pennsylvania. *Id.* at ¶¶ 22-23.

## II. ANALYSIS

### A. Applicable Standard

When a defendant objects to the Court's jurisdiction over its person, its opponent carries the burden of demonstrating facts that justify the assertion of judicial authority. While the Court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff;" *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citation omitted), Norfolk "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3rd Cir. 1984). Plaintiff's evidence must establish with "reasonable particularity" the existence of contacts between PSS and the forum state sufficient to support jurisdiction. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n.*, 819 F.2d 434, 437 (1987).

The Court may assert jurisdiction over nonresident defendants to the extent permitted by Pennsylvania state law. *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). According to the Third Circuit, "to exercise personal jurisdiction over a defendant, a federal court . . . must undertake a two-step inquiry. First, the court must apply the relevant state . . . statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998).

The jurisdiction of Pennsylvania courts over out-of-state defendants may be asserted "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 PA. C.S. § 5322(b). The inquiry is thus whether the quality or quantity of PSS' contacts with Pennsylvania have been such to satisfy the principles of either specific or general jurisdiction.

4

Typically, "[t]o justify the exercise of general jurisdiction over a nonresident, a plaintiff must . . . . adduce extensive and persuasive facts indicating that the defendant has maintained continuous and substantial forum affiliations." *D'Onofrio v. Mattino*, 430 F. Supp. 2d 431, 440 (E.D. Pa. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) and *Reliance Steel Prod. v. Watson, Ess, Marshall, & Enggas*, 675 F.2d 587, 588-89 (3d Cir. 1982)).

The doctrine of specific jurisdiction legitimates this Court's authority if Norfolk's claims arise out of Defendant's forum-related activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). "To establish specific jurisdiction a plaintiff must show that the defendant has minimum contacts with the state such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) (citation omitted). A minimum contact can be "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 109, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)). Even if Norfolk demonstrates a *prima facie* case of specific jurisdiction, however, PSS may still prevail in its motion by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Because Plaintiff never argues that PSS is subject to general jurisdiction in this forum, and because the record does not reveal the kind of "extensive and persuasive" facts that would indicate Defendant's "continuous and substantial" contacts with Pennsylvania, the Court's analysis exclusively

5

addresses the question of specific jurisdiction.

## B. Defendant's Contacts with Pennsylvania

The Third Circuit has held that

> In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach. Parties who reach out beyond [their] state and create continuing relationships and obligations with citizens of another state are subject to the regulations of their activity in that undertaking. Courts are not reluctant to find personal jurisdiction in such instances. Modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

*Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (citations omitted). However, a contract by itself does not establish jurisdiction. *Grand Entm't Group. Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (citing *Burger King*, 471 U.S. at 478). Rather, "minimum contacts" is measured by the totality of the circumstances: "Courts must also look to prior negotiations and contemplated future consequences. Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." *Id.* (citations omitted).

In one case, for example, jurisdiction was largely premised on the defendant's solicitation of business in the forum state. In *Mellon Bank PSFS, National Association v. Farino*, 960 F.2d 1217 (3d Cir. 1992), a broker for various Virginia partnerships sought financing for real estate transactions through the plaintiff, a Pennsylvania bank. The broker represented that the limited partners had offered to personally guarantee any loan. When the partnerships defaulted on the loans, the bank filed suit in Pennsylvania against the individual partners. *Farino*, 960 F.2d at 1219-20. Jurisdiction was affirmed in part because the "defendants . . . purposefully availed themselves of the privilege of conducting business in" the forum state. The court also noted, however, that by "offering to guaranty [the] debt, the defendants . . . remained liable as guarantors and sureties if the principal obligor ever failed to pay.

6

The actions of the defendants, therefore, knowingly created continuing obligations with a citizen of Pennsylvania." *Id.* at 1223 (citing *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647, 70 S. Ct. 927, 94 L. Ed. 1154 (1950)).

The Third Circuit gave some dimension to *Farino* when it subsequently considered circumstances similar to the ones *sub judice*. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147 (3d Cir. 1995). In *Vetrotex*, the court affirmed the dismissal of a complaint against a company whose only tie to Pennsylvania was the contract that gave rise to plaintiff's lawsuit. *Vetrotex*, 75 F.3d at 154. While the parties had a history of business relationships, the defendant's only contacts with Pennsylvania "consisted of some telephone calls and letters written" to the plaintiff there. *Id.* at 152. Noting that purposeful availment was generally more difficult to find when the defendant is a passive buyer, the Court placed special emphasis on the fact that it was the plaintiff who had solicited the defendant's business. *Id.* Thus, even if "informational communications in furtherance of a contract between a resident and a nonresident" were usually insufficient to establish minimum contacts, the case was distinguishable from those "where the defendant solicited the contract or initiated the business relationship leading up to the contract . . . ." *Id.* at 152-53 (citing *Farino*).

*Vetrotex* and *Farino* have therefore come to support the proposition that "[i]n cases where a out-of-state [*sic*] resident contracts with a forum resident, whether the out-of-state resident initiated the relationship is crucial." *Shanks v. Wexner*, No. 02-7671, 2003 U.S. Dist. LEXIS 4014, at *11 (E.D. Pa. Mar. 18, 2003). *See also Pa. Mach. Works, Inc. v. N. Coast Remanufacturing Corp.*, No. 04-1731, 2004 U.S. Dist. LEXIS 23087, at *10 (E.D. Pa. Nov. 12, 2004) ("Courts applying *Burger King* often conclude that out-of-state defendants have sufficient contacts when they initiate a business relationship with an in-state party or negotiate a contract in the forum state."). As the Eleventh Circuit has concluded, "'[a]

direct solicitation by a foreign defendant of the business of a forum resident has been held to be "purposeful availment" in cases where either a continuing relationship or some in-forum performance on the part of the plaintiff was contemplated.'" *Farino*, 960 F.2d at 1225 (quoting with approval *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 994 (11th Cir. 1986)).

Though the question is admittedly a close one, the Court holds that Norfolk has established sufficient minimum contacts to support a finding of specific jurisdiction over Defendant. Under *Vetrotex*, it is of considerable probative value that PPS first approached Norfolk. This is not a case where a Pennsylvania seller approached a passive buyer in a foreign jurisdiction. Rather, PPS actively sought the privilege of doing business with a company in Pennsylvania. The inclusion of NSR Altoona's address on Purchase Order #222258—as well as on Defendant's two previous Purchase Orders—indicates that PSS knew it was soliciting services that would be at least partly performed in Pennsylvania. By hoping to directly benefit from the contractual relationship that Purchase Order #222258 was meant to engender, PSS satisfied the purposeful availment standard of specific jurisdiction. *Farino*, 960 F.2d at 1225. Even if the contract did not contemplate a continuing relationship between the Parties, it necessarily required some in-forum performance on the part of NSR Altoona. Document No. 1, ¶ 11. In this manner, the case *sub judice* is clearly within the purview of *Vetrotex*'s express limitations. *Remick v. Manfredy*, 238 F.3d 248, 257 (3d Cir. 2001) (calling attention to the limiting language of *Vetrotex*).

Moreover, in the wake of the initial contact, PSS sent considerable written and electronic communications into Pennsylvania. *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."). These communications were not

simply "informational" but amended the central terms of the Parties' agreement. *See Shanks*, 2003 U.S. Dist. LEXIS 4014, at **11-12 (adding weight to communications that went "to the heart of the transaction"). Such purposeful availment of Pennsylvania business opportunities, as well as the contacts with the forum state created by PSS' active participation in substantive contract negotiations, establish the minimum contacts necessary for an assertion of specific jurisdiction. Nonetheless, the Court may not deny Defendant's motion unless that jurisdiction comports with "traditional notions of fair play and substantial justice."

### C. Fair Play and Substantial Justice

To comply with due process, an assertion of personal jurisdiction must meet basic standards of fairness. But Plaintiff having made a *prima facie* showing of minimum contacts, the burden to prove unfairness is now on PSS, and it is a substantial one. "Once the plaintiff has made out a *prima facie* case of minimum contacts, as here, the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Grand Entm't Group*, 988 F.2d at 483 (citations omitted). The following factors control: "the burden on the defendant, the interests of the forum State, . . . the plaintiff's interest in obtaining relief[,] . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (citation omitted).

Emphasizing its minimal contacts with the forum state, PSS argues that

> [t]o drag a Canadian corporation with its offices in Calgary, Alberta into court in Pennsylvania where all of said company's negotiations took place in Canada, where all payments pursuant to the disputed dealings were made to a location in Georgia and where much of the goods delivered pursuant to the disputed dealings originated from points outside Pennsylvania would be unconscionable, and would not in any

9

way "comport with traditional notions of fair play and substantial justice." Document No. 13, p. 13. Defendant also contends that because Norfolk "is merely registered as a foreign corporation doing business in Pennsylvania, that state has no interest in this lawsuit." Document No. 21, pp. 2-3. Plaintiff's "choice to do business in the Commonwealth should not be afforded any weight in determining whether Pennsylvania has jurisdiction over a breach of contract action between two non-Pennsylvania residents." *Id.* at 2.

In contrast, Norfolk has submitted evidence of its substantial presence in Pennsylvania, thus attesting to that state's "'manifest interest' in . . . protecting all of its residents, including [Norfolk], from non-residents who fail to honor their contractual obligations." Document No. 24, p. 3-4. Plaintiff also argues that jurisdiction over PSS is fair, in part, due to the volume of Defendant's business in the forum state. Document No. 16, pp. 9-10. Moreover, Plaintiff avers, "[t]here is certainly no evidence that any other forum would have an interest superior to that of Pennsylvania." *Id.* at 10.

Borrowing from the venue provision, corporate residency is distinct from corporate citizenship. *Compare* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . .") *with* 28 U.S.C. § 1391(c) ("[A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction. . . ."). Norfolk would almost certainly be subject to general jurisdiction in Pennsylvania, owing to its substantial contacts with this state. Exh. B attached to Document No. 24. The Court is thus satisfied that Pennsylvania has an interest in protecting Plaintiff from the harm alleged in this case.

Moreover, while PSS will certainly incur some burden litigating a case in Pennsylvania, Defendant has not shown that it is so great as to constitute a violation of due process. Because

Defendant offers little argument as to any of the other relevant factors, it does not make a compelling case for dismissal and fails to demonstrate that the Court's jurisdiction would somehow contravene the traditional notions of fair play and substantial justice.

## III. CONCLUSION

Defendant willfully initiated a contractual relationship with a company in Pennsylvania that it knew would require performance in Pennsylvania. Moreover, in the course of substantive negotiations surrounding that contract, Defendant sent several communications that indicate PSS was purposefully availing itself of the privilege of conducting business in Pennsylvania. For those reasons, and because Defendant has not shown that the Court's jurisdiction violates any traditional notion of fair play or substantial justice, the motion to dismiss must be denied.

An appropriate Order follows.

**AND NOW**, this 29th day of March, 2007, upon consideration of Defendant's Motion To Dismiss (Document No. 12), **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

**IT IS FURTHER ORDERED** that the Court's previous stay is hereby lifted, and discovery in this proceeding shall recommence immediately.

BY THE COURT:

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE

Cc: **All counsel of record**